IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| TORREY CALDWELL, #242834, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 3:24-cv-00322 |
| | ) | Judge Trauger |
| ZACHARY POUNDS, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Torrey Caldwell, a state inmate confined at the Riverbend Maximum Security Institution (RMSI), has filed a pro se civil rights Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and paid the civil filing fee.

This case is before the court for initial review of the Complaint under the Prison Litigation Reform Act (PLRA).

### I. INITIAL REVIEW

**A. Legal Standard**

In cases filed by prisoners, the court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c).

To determine whether the Complaint states a claim upon which relief may be granted, the court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to the plaintiff. *Inner City*, *supra*.

The plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Facts**

The Complaint alleges that, after marijuana was found during a random search of the plaintiff's cell, he was charged with the disciplinary offense of drug possession on April 26, 2023. (Doc. No. 1 at 3.) The drugs were discovered just five days after the plaintiff's cellmate, Eric Reed, had been removed to a different housing unit following an opiate overdose. (*Id.*) Reed subsequently executed a written statement on May 10, 2023, acknowledging that the marijuana was his. (*Id.*) The plaintiff provided Reed's statement to his staff advisor, counselor Robert Bates, for Bates's review prior to the plaintiff's disciplinary hearing scheduled for May 15. (*Id.* at 3–4.) The plaintiff also submitted Reed's statement to the disciplinary chairman, defendant Raymond

Moyer, on May 10, the same day the statement was executed. Moyer consulted with Reed that day, outside the presence of the plaintiff or Counselor Bates. (*Id.*) Later in the day on May 10, Moyer called the plaintiff in to the disciplinary board office and threatened to "street charge" the plaintiff with drug possession. (*Id.*) One day prior, on May 9, the plaintiff had requested that Moyer recuse himself from the disciplinary hearing for "fear of a partial and unfair proceeding." (*Id.* at 4.) The plaintiff renewed the request for Moyer's recusal on May 15, the day the hearing was scheduled. (*Id.*)

Counselor Bates was not present at RMSI on May 15, so the hearing was rescheduled to May 19, 2023. On May 19, prior to the commencement of the hearing, Bates and Moyer had a "heated altercation" after Bates learned that Reed "had been denied [permission] to appear at the hearing and his written statement had been sabotaged." (*Id.*) Moyer denied Bates and the plaintiff's separate requests for another continuance of the hearing, whereupon Counselor Bates announced that he would take the matter to the Warden of Security and directed the plaintiff to return to his cell. (*Id.* at 4–5.) Three days later, the plaintiff was informed by another counselor that he had been found guilty of drug possession and would be "special reclassed" to a higher security level. (*Id.* at 5.) The determination of the plaintiff's guilt was made in his absence, Bates's absence, and the absence of "the physical evidence" (*id.*), which the Court assumes to be a reference to the confiscated drugs. The plaintiff received 30 days' punitive segregation and a four-dollar fine. (*Id.*) His appeal of this disciplinary action was unsuccessful.

The plaintiff claims that he was deprived of his substantive and procedural due process rights under the Fourteenth Amendment as a result of Moyer's actions in adjudicating his disciplinary charge, Warden Pounds's actions in denying the appeal of the plaintiff's disciplinary conviction, and the Commissioner and Assistant Commissioner of the Tennessee Department of

3

Correction's actions in "failing to review and ignoring" the unlawful actions of Moyer and Pounds. (*Id.* at 8–9.) The plaintiff claims that he has suffered "emotional distress and injury," and asserts that his rights have been and will be violated in the future when he is inevitably denied his "state-created liberty interest for the expectation [of] parole amounting to atypical and significant hardship in the continuation of prison life." (*Id.* at 9.) He seeks a declaration that his rights have been violated and an award of compensatory and punitive damages. (*Id.* at 10; *see* Doc. No. 5.)[1]

**C. Analysis**

"The Fourteenth Amendment's Due Process Clause protects individuals against the deprivation of life, liberty, or property without due process. '[T]hose who seek to invoke its procedural protections must establish that one of these interests is at stake.'" *Damron v. Harris*, No. 21-3877, 2022 WL 4587625, at *2 (6th Cir. July 28, 2022) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). Indeed, regardless of whether a plaintiff claims a violation of his procedural or substantive due process rights, he must first allege government action infringing an interest in life, liberty, or property before the court will determine what process was due and whether it was provided. *See Grinter v. Knight*, 532 F.3d 567, 572–75 (6th Cir. 2008) (holding, *supra* at 574–75, that substantive due process claim must fail because government action did not infringe a liberty interest, and "even if Grinter had asserted a procedural due process claim against these defendants, it also would have failed" for that reason). In the context of prison discipline, "[a] prison disciplinary action does not implicate a liberty interest requiring due process safeguards unless the punishment imposed will 'inevitably' affect the duration of an inmate's sentence or inflict an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"

---

[1] In his Motion for Leave to File an Amended Complaint, the plaintiff merely seeks to amend the language of his prayer for relief, to specify the amount of damages he claims against the defendants jointly and severally. (Doc. No. 5.) This motion will be granted.

4

*Damron*, 2022 WL 4587625, at *2 (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)).

Here, the Complaint alleges that drugs were found hidden in the plaintiff's cell during an unannounced search and that the plaintiff's former cellmate, a known drug-user, claimed (two weeks after the plaintiff was charged with a disciplinary offense) to have hidden the drugs in the cell prior to his relocation. When the plaintiff and his staff advisor learned on the day of the plaintiff's disciplinary hearing that the former cellmate would not be present at the hearing and that the hearing would not be rescheduled, the advisor informed the hearing officer during a "heated altercation" that he would take the matter up the chain of command and instructed the plaintiff to return to his cell. (Doc. No. 1 at 4–5.) The hearing officer then proceeded to conduct the hearing (as scheduled, but without the plaintiff in attendance) and found the plaintiff guilty of the disciplinary offense. As a result of the disciplinary conviction, the plaintiff was given 30 days in punitive segregation and a four-dollar fine. (*Id.* at 5.) The Complaint makes no mention of the conditions in punitive segregation; it only asserts that the fact of the plaintiff's disciplinary conviction will be an obstacle to "the expectation for his parole." (*Id.* at 9.)

Convicted prisoners "have narrower liberty interests than other citizens as 'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Grinter*, 532 F.3d at 573 (quoting *Sandin*, 515 U.S. at 485). The Supreme Court's decision in *Sandin* established that a 30-day sentence to disciplinary segregation "d[id] not present a dramatic departure from the basic conditions of" a lengthy prison sentence, and "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Sandin*, 515 U.S. at 485–86. That decision further established that the possibility of a disciplinary conviction affecting a future parole determination was of no moment in the due process analysis, because as a mere factor

5

for consideration in the parole decision, it would not "inevitably" affect the duration of the inmate's confinement. *See id.* at 487 ("Nothing in Hawaii's code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence[.]"). The Court therefore held that Mr. Sandin was not entitled to the procedural safeguards that would otherwise apply in the prison discipline setting. *Id.*

*Sandin* squarely applies in this case. The court takes judicial notice that the plaintiff is serving a life sentence.[2] His punishment for possessing contraband—disciplinary segregation for 30 days and a fine of four dollars—is not a punishment that dramatically departs from the basic conditions of his sentence, or that presents an atypical and significant deprivation that implicates any interest protected under the Fourteenth Amendment. Nor does misbehavior in prison have such an effect on Tennessee parole determinations that the plaintiff's confinement must *inevitably* be extended as a result of his disciplinary conviction. *See Brennan v. Bd. of Parole*, 512 S.W.3d 871, 876 n.5 (Tenn. 2017) (noting that the parole board "may consider" criteria including "the prisoner's institutional record" and "any other factors the Board deems relevant") (citing Tenn. Bd. Parole R. 1100-01-01-.07(1)); *Walker v. Tennessee Bd. of Parole*, No. M2023-00219-COA-R3-CV, 2023 WL 7219241, at *4 (Tenn. Ct. App. Nov. 2, 2023) (finding that "the fact that Petitioner may have been a model prisoner, has a good record, and has support for his release does not entitle him to parole").

Accordingly, under *Sandin*, the Complaint fails plausibly to allege the deprivation of any interest protected under the Due Process Clause of the Fourteenth Amendment. And the Complaint's stray references to the alleged denial of due process "causing injury to [his] First

---

[2] A search of the plaintiff's name on the Tennessee Department of Correction's publicly available Felony Offender Information Lookup, https://foil.app.tn.gov/foil/details.jsp, reveals that he is serving a life sentence for first-degree murder. *See also Caldwell v. State*, No. M2002-02436-CCA-R3-CO, 2003 WL 21877924 (Tenn. Crim. App. July 9, 2003).

Amendment rights" (Doc. No. 1 at 8) and "subject[ing] him to cruel and unusual punishment in violation of the Eighth Amendment" (*id.* at 9) are not sufficient to raise any other plausible constitutional claim. Accordingly, the Complaint must be dismissed.

### III. CONCLUSION

For the above reasons, the plaintiff's Motion for Leave to File an Amended Complaint (Doc. No. 5) is **GRANTED** and this action is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief can be granted. The Court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

In light of this outcome, the plaintiff's motion to appoint counsel (Doc. No. 2) and request for blank summonses (Doc. No. 6) are **DENIED** as moot.

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge